IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Angelo Ham, ) | Civil Action No. 6:12-937-JMC-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Anthony J. Padula, et al., ) | |
| ) | |
| Defendants ) | |
| ) | |

    This matter is before the court on the defendants' motions for summary judgment (doc. 47). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

    Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## **BACKGROUND**

    The plaintiff is currently incarcerated in the Special Management Unit ("SMU") at Lee Correctional Institution ("LCI"), a facility managed by the South Carolina Department of Corrections ("SCDC"). The defendants were SCDC employees at all times relevant to this case. The plaintiff filed his original complaint (doc. 1) on April 3, 2012, naming four defendants. On May 7, 2012, the plaintiff filed an amended complaint (doc. 10), naming eight more defendants. On July 9, 2012, the undersigned issued a report and recommendation that the amended complaint be dismissed as to defendants Cribb, White, Hallman, Tatarsky, Peele, and Johnson, and authorized service of process on the remaining defendants. The remaining defendants, Padula, Oberman, Cain, Brooks,

Whitney, and Bracey-Simon, were served and filed an answer to the amended complaint on August 2, 2012 (doc. 41).

On September 17, 2012, the remaining defendants filed a motion for summary judgment (doc. 47). The next day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On October 22, 2012, this court granted the plaintiff's motion for an extension in which to file a response, and on November 14, 2012, the plaintiff filed a response in opposition to summary judgment (doc. 72). The defendants' motion for summary judgment (doc. 47) did not address the plaintiff's access to courts claim. On May 15, 2013, by way of text order (doc. 77), the defendants were advised that should they wish to file a dispositive motion on the access to courts claim, they must do so on or before May 22, 2013. On May 22nd, the defendants filed a motion for summary judgment on the access to courts claim (doc. 80), and the plaintiff was again notified via a *Roseboro* order of the summary judgment procedure and the possible consequences if he failed to respond adequately on or before June 27, 2013 (doc. 81). The plaintiff requested and was granted an extension of time in which to file his response, and he timely filed it on July 11, 2013 (doc. 88).

The plaintiff alleges that on October 22, 2010, LCI Officer Cain used excessive force against him by "gassing" him for refusing to leave the shower, calling him a "snitch" (comp., pp. 3-4). He claims that he suffered "severe acid reflux pain in the thoracic inlet" as a result *(id.* p. 4). Attached to his complaints are declarations of fellow inmates, who claim to have heard and/or seen the encounter from their cells (doc. 1-1, pp. 1-6). Defendants Whitney and Bracey-Simon are LCI mailroom employees, and the plaintiff alleges that in 2009, they denied him access to court by refusing to mail his documents to the Lee County Clerk of Court for filing (amended comp., p. 1). Defendants Padula,

2

Oberman, and Brooks have supervisory positions at LCI, and the plaintiff seeks to hold them liable under the legal theory of respondeat superior.

The defendants deny that excessive force was used and submit that Officer Cain properly applied chemical munitions to gain control of the plaintiff. They further contend that the plaintiff was checked over by the medical staff after the incident and was uninjured. In support, the defendants provide the affidavit of Officer Cain, SCDC records noting the use of chemical munitions, and the plaintiff's relevant medical records from LCI (docs. 47-1 through 3). While the medical records show that the plaintiff complained of a burning sensation in his chest immediately after the gassing, the defendants point out that he reported such pain days earlier and had attributed it to eating meat (doc. 47-3).

As to the plaintiff's claim that they should be held liable for failing to mail legal documents to the Lee County Clerk of Court, the defendants argue that the plaintiff has not set forth any actionable injury or damage that resulted from the alleged failure. In his response (doc. 88), the plaintiff does not challenge this argument, but instead merely restates his contention that his constitutional rights were violated.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

*Excessive Force*

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298-304 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the United States Supreme Court held that whether the prison disturbance is a riot or a lesser disruption, corrections officers are required to balance the need to restore discipline through the use of force against the risk of injury to inmates. The Court held that

4

"whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is…whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7.

The Fourth Circuit Court of Appeals applies the following factors when analyzing whether a prison official used force in good faith and not maliciously or sadistically: (1) The need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, (4) any efforts made to temper the severity of a forceful response, and (5) the absence of serious injury. *Williams*, 77 F.3d at 762 (citing *Hudson*, 503 U.S. at 7). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the United States Supreme Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. *Id.* at 36-40 (citing *Hudson*, 503 U.S. at 4). However, the Court noted that the absence of serious injury may be one factor to consider in the Eighth Amendment inquiry as it may suggest "'whether the use of force could plausibly have been thought necessary in a particular situation'" and may indicate the amount of force applied. *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7).

"[A]lthough it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells," the Fourth Circuit has observed that "it is necessary to examine the totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used to determine the validity of the use of tear gas in the prison environment." *Williams*, 77 F.3d at 763 (internal quotation marks omitted). "[M]ace can be constitutionally used in small quantities to 'prevent riots and escapes' or to control a 'recalcitrant inmate.'" *Id.* (quoting *Landman v. Peyton*, 370 F.2d 125, 138 & n.2 (4th Cir. 1966)). "A limited application of mace may be 'much more humane and effective than

a flesh to flesh confrontation with an inmate.'" *Id.* (quoting *Soto v. Dickey*, 744 F.2d 1260, 1262 (7th Cir. 1984)).

The plaintiff alleges that Officer Cain used excessive force when he sprayed him with chemical munitions. However, the plaintiff admits that he refused to comply with Officer Cain's order to exit the shower. As set out in his complaint, the plaintiff took umbrage at Officer Cain for calling him a snitch and told him, "You got me fucked up with somebody else but I'm not gone follow you up... (comp., p. 4). Inmate Kenneth Brantley verifies that the plaintiff made this statement (Brantley decl., doc. 1-1, p. 3). This refusal by the plaintiff, then unrestrained, to comply with Officer Cain's directive created a potentially dangerous situation, and Officer Cain's use of mace to gain compliance and restore order was appropriate. Moreover, there is no evidence before the court that Officer Cain maliciously or sadistically used an excessive amount of spray or denied the plaintiff care after the spray was used. The SCDC incident report shows that only 14 grams of chemical munitions were deployed, and the plaintiff's medical records show that he was examined after the incident with no serious injury, though he reported a burning sensation in his chest (docs. 47-2, 47-3). No treatment was needed then, and he was instructed to report back to the medical unit if the burning sensation continued (doc. 47-3). A close review of the medical records show that the plaintiff complained of a burning sensation in his chest prior to the gassing incident and attributed it to eating meat (*id.*, encounter 86). The medical records further reveal that six days later, the plaintiff again complained of burning in the chest after eating and was given medication (*id.*, encounter 88).

Based on the foregoing, the plaintiff has failed to present adequate evidence to withstand summary judgment on his Eighth Amendment claim.

*Access to Court*

The plaintiff claims that LCI Associate Warden Brooks and mailroom employees Whitney and Bracey-Simon denied him access to court by failing to mail legal documents to the Lee County Clerk of Court in 2009. However, the plaintiff provides nothing to show how this alleged failure has prejudiced him. The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). As argued by the defendants, the plaintiff has failed to show that their purported failure to mail his legal documents resulted in any actionable harm compensable here. The plaintiff has not demonstrated that he was prevented from refiling his state court documents or that the alleged mailing failure jeopardized or prejudiced his state court claim in any event. Indeed, he has presented no evidence of injury whatsoever from the defendants' purported failure to mail his state court documents. Accordingly, the defendants are entitled to summary judgment on this issue.

*Respondeat Superior*

The plaintiff makes no allegation of personal involvement on the part of defendants Padula, the Warden at LCI; Brooks, the Associate Warden at LCI, and Oberman, the SMU Administrator at LCI. In Section 1983 actions, "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). To the extent he attempts to hold these defendants liable in their supervisory capacities, the doctrine of

*respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). The plaintiff has failed to make such a showing here.

### *Eleventh Amendment Immunity*

To the extent the defendants are sued in their official capacities, they correctly assert that they are immune from suit for damages in this court.[1] As arms of the state, they are entitled to sovereign immunity and are not "persons" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Although a State may waive sovereign immunity, *Lapides v. Board of Regents*, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. *See* S.C. Code Ann. § 15-78-20(e).

### *Qualified Immunity*

As an additional ground for dismissal, the defendants in their individual capacities are entitled to qualified immunity as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as their conduct did not violate any constitutional right of the plaintiff.

---

[1] The plaintiff seeks monetary damages in this action (*see* comp. and amended comp.) and does not seek injunctive relief.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendants' motions for summary judgment (docs. 47 and 80) be granted.

IT IS SO RECOMMENDED.


July 15, 2013                                              s/ Kevin F. McDonald
Greenville, South Carolina                         United States Magistrate Judge